Filed 7/13/26  Salazar v. Astalos CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| FRANCISCO SALAZAR, | D086731 |
| Plaintiff and Respondent, | (Super. Ct. No. 25CU001738C) |
| v. | |
| DALIA ASTALOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Marcella O. McLaughlin, Judge.  Reversed and remanded.

Polek Law and Frank J. Polek for Defendant and Appellant.

Donald R. Holben & Associates and Karen S. Spicker for Plaintiff and Respondent.

Attorney Dalia Astalos appeals the trial court's order under the anti-SLAPP statute (Code Civ. Proc.,[1] § 425.16) denying her special motion to strike claims asserted by Francisco Salazar.  Astalos contends that the court erred in finding that Salazar's claims do not arise from protected activity

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

under the anti-SLAPP statute.  Astalos also contends that if the court had reached the second step in the anti-SLAPP analysis, Salazar would have failed to meet his burden of showing a probability of succeeding on his claims.

We conclude that Astalos met her burden to show that her statements, which form the basis of Salazar's claims against her, were protected activity under section 425.16, subdivision (e)(2).  We also conclude that Salazar failed to show his claims had minimal merit because he submitted no admissible evidence to support them.  Accordingly, we reverse the trial court's order.

FACTUAL AND PROCEDURAL BACKGROUND

A.      *The Landlord-Tenant Dispute*

In January 2025, Salazar sued Danielle and Phillip Hynes (collectively, the Hyneses) and their attorney Astalos for defamation, false light, and intentional infliction of emotional distress.  He alleged that he and the Hyneses both lived in different homes on the same lot in Imperial Beach, California, for several years.  Although their families were once friendly, Salazar's relationship with the Hyneses soured after the Hyneses allegedly breached their lease with their landlord, Frank Fera, with whom Salazar "always had a good relationship."  According to the complaint, the Hyneses refused to clean up their yard and were upset about changes to the lease agreement.

In early April 2024, the Hyneses hired Astalos and her law firm to represent them in the escalating dispute.  According to Astalos's declaration in support of her anti-SLAPP motion, Fera sometimes stopped by and harassed Danielle when she was at home alone with her two children.  The declaration stated that Fera often entered the Hyneses garage without notice, and that Fera would send his friends—including other tenants, like Salazar—into the Hyneses' home to make repairs without notice.  Danielle

2

also told Astalos that Fera and Salazar filmed the Hyneses from a nearby balcony from late February through mid-March 2024. A few weeks after Astalos started representing the Hyneses, she sent a cease-and-desist letter to Fera, who then copied his attorneys in his response.

On April 30, 2024, Fera's attorney served a three-day notice to perform or quit on the Hyneses, alleging that they were hostile towards Fera, disrupted the peace of other residents, and had failed to adequately maintain their property. (See § 1161.) The notice demanded that they "only maintain civil, brief and peaceful communications" with Fera, "not disturb the quiet enjoyment of other residents," and "[m]aintain the premises in good repair and clean condition."

According to Astalos's declaration, Fera served another three-day notice to cure on May 1, 2024, which prompted the Hyneses to move their belongings out of a play area in an adjacent lot. Astalos sent an e-mail on May 8, 2024, to Fera's attorney asking that Fera only communicate with the Hyneses through counsel. Around that time, the Hyneses told Astalos that their children were afraid of Fera and his associates, including Salazar.

On or about May 7 and 8, 2024, Fera provided 24-hour notices informing the Hyneses that workmen, contractors, and Fera's agents would be entering the property for repairs. The Hyneses welcomed the repairs, but the work was not done because Fera's attorney asserted that Danielle denied the workers entry. Two more 24-hour notices for repairs arrived on May 22, 2024. Around that same time, Astalos searched an online sex offender registry and a criminal records database for Salazar's name. In a search for the names "Frank Salazar" and "Francisco Salazar," Astalos saw two hits in Southern California, and she believed one of them fit Salazar's age and description.

3

According to her declaration, Astalos e-mailed Fera's attorney asking that they "[p]lease make sure Mr. Fera does not send the registered sex offender named Frank Salazar as his handy man as he has done in the past." Her e-mail said that she had "informed Ms. Hynes to deny Frank Salazar entry since his crimes were against children under the age of 14 and Mr. Fera lets him stay near the Tenants' children." The e-mail went on to say that the Hyneses' child had a meeting with their school district in the afternoon and that any visit should be before or after the meeting if possible. Fera's counsel responded that Fera would send a third party to perform the repairs instead of Salazar.

Salazar alleged in his unverified complaint that he learned of Astalos's statements the next day from Fera, whose attorneys had informed him about Astalos's e-mail. In his complaint, Salazar denied being a sex offender and claimed that Astalos's accusation has caused him and his family humiliation and emotional distress.

On May 29, 2024, Fera filed an unlawful detainer against the Hyneses seeking their eviction. In July 2024, Fera and the Hyneses came to an amicable agreement for the Hyneses to move out of the property. A stipulated judgment was filed and the unlawful detainer case was dismissed in August 2024.

B.      *Astalos's Anti-SLAPP Motion*

In March 2025, Astalos filed an anti-SLAPP motion against all of Salazar's claims, attaching her own declaration in support. Salazar filed an opposition attaching only his attorney's declaration in support of the attorney's request for fees.

The trial court denied Astalos's anti-SLAPP motion after finding that she did not meet her burden to show the complaint arose from protected

4

activity. (§ 425.16.) The court reasoned that Astalos's statement about Salazar being a registered sex offender was not protected activity because it did not relate to the "substantive issues of the eviction proceedings or the anticipated unlawful detainer action." Having decided that Astalos failed to meet the initial prong of the anti-SLAPP analysis, the court denied Astalos's motion without addressing whether Salazar's claims have minimal merit.

## DISCUSSION

Astalos asks us to reverse the trial court's order denying her anti-SLAPP motion as to Salazar's claims, arguing that they arise from protected activity under Code of Civil Procedure section 425.16, subdivisions (e)(1) through (e)(4). Astalos also argues that Salazar cannot establish a probability of prevailing on his claims because: (1) he presented no admissible evidence to support them; (2) the litigation privilege and qualified common interest privilege under Civil Code section 47 bar his claims; and (3) each cause of action lacks minimal merit.

We conclude that Astalos's statements about Salazar were protected activity under section 425.16, subdivision (e)(2), because they were made in connection with anticipated litigation. We further conclude that because Salazar presented no evidence whatsoever to support his claims, he has not met his burden of establishing a probability of success. Accordingly, we reverse the court's order. We need not and do not resolve the other issues raised on appeal.

A.     *Statutory Framework*

The anti-SLAPP statute provides in relevant part that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike [anti-SLAPP motion],

5

unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) Ruling on an anti-SLAPP motion typically involves two steps. First, defendants moving to strike a cause of action must show the act underlying the claim falls within one of the four categories of protected activity listed in section 425.16, subdivision (e). (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66; *Bowen v. Lin* (2022) 80 Cal.App.5th 155, 160 (*Bowen*).)

Those four categories include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(1)–(4).)

If defendants make a sufficient showing under the first prong of the anti-SLAPP analysis, the burden shifts to plaintiffs to show the targeted causes of action are legally sufficient and supported by evidence that, if credited, would sustain a judgment for plaintiffs. (*Baral, supra*, 1 Cal.5th at pp. 384, 396; *Bowen, supra*, 80 Cal.App.5th at p. 160.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29

6

Cal.4th 82, 89 (*Navellier*); accord, *Bowen*, at p. 160.)  We apply de novo review to the trial court's decision on both prongs.  (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1250; *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 796; *Starr v. Ashbrook* (2023) 87 Cal.App.5th 999, 1018.)

        B.     *Analysis*

             1.     *Prong One – Protected Activity*

As noted, in ruling on Astalos's anti-SLAPP motion, the trial court found that Astalos's statements to Fera's attorney about Salazar were not made in connection with anticipated litigation because her reference to him being a "registered sex offender" did not relate to "the substantive issues of the eviction proceedings or the anticipated unlawful detainer action."  Based on our independent review, we conclude otherwise.

It is well settled that "the basic act of filing litigation" is a protected activity for purposes of the anti-SLAPP law.  (*Navellier, supra*, 29 Cal.4th at p. 90 (internal quotation marks omitted); see, e.g., *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1480 (*Feldman*) [concluding that the "filing of an unlawful detainer action" is protected activity within the meaning of section 425.16].)  Anti-SLAPP protection also " ' "extends to conduct that relates to such litigation, including statements made in connection with or in preparation of litigation.  [Citation.]  Indeed, courts have adopted 'a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16.' " ' [Citation.]  [¶]  Even where litigation has not commenced, 'if a statement "concern[s] the subject of the dispute" and is made "in anticipation of litigation 'contemplated in good faith and under serious consideration,' " [citation] then the statement may be petitioning activity protected by section 425.16.' " (*Cocoa AJ Holdings, LLC v. Schneider* (2025) 115 Cal.App.5th 980, 991; see also *RGC Gaslamp, LLC v.*

*Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 425 ["Statements made in preparation for litigation or in anticipation of bringing an action," amount to protected activity under the anti-SLAPP statute].)

In *Feldman*, the Court of Appeal reasoned that since "[s]ervice of a three-day notice to quit was a legally required prerequisite to the filing of the unlawful detainer action," the defendants' "service of the three-day notice to quit was a communication preparatory to the bringing of the unlawful detainer action." (*Feldman, supra*, 160 Cal.App.4th at p. 1480.) Therefore, the *Feldman* court concluded, "[s]ervice of the three-day notice to quit in this case was also protected activity within the meaning of section 425.16." (*Ibid*.) The *Feldman* court also said that a series of "alleged 'threats,' " made by the landlord's representative to a tenant pertaining to his tenancy were "[c]learly . . . communications in connection with an ongoing dispute and in anticipation of litigation." (*Id*. at p. 1481.)

Here, Fera had already served multiple three-day notices to perform or quit on the Hyneses by the time Astalos wrote the e-mail at issue, so the parties were even further along the path towards litigation than the parties in *Feldman*. This is evidenced by the fact that both Fera and the Hyneses had already retained counsel, and their attorneys had been exchanging communications about their disputes over the property for weeks. Both the complaint and Astalos's declaration describe how the relationship between the Hyneses and Fera continued to deteriorate after the three-day notices were served. Then only a week after Astalos's May 22, 2024 e-mail, Fera filed an unlawful detainer action. The proximity in time between those events and the circumstances surrounding them further support that Astalos's statements were made in anticipation of litigation.

8

We further conclude that the subject matter of Astalos's statements pertained to the dispute between the Hyneses and Fera. The first three-day notice expressly stated that the Hyneses breached their lease by failing to adequately maintain and repair the premises. According to the same notice, their lease prohibited the Hyneses from making any repairs without Fera's prior written consent. Because repairs were a relevant issue in their landlord-tenant dispute, Astalos's request regarding whom Fera should send to conduct the required repairs "concern[ed] the subject of the dispute" and related to an issue for consideration or review in the anticipated litigation. (*Bassi v. Bassi* (2024) 101 Cal.App.5th 1080, 1098, 1100.) The context of Astalos's statements further supports our conclusion because the remainder of her May 22, 2024 e-mail addressed the timing of the repairs and how to schedule them around Danielle's meeting. The e-mail itself was also in response to multiple 24-hour notices for repairs, two of which arrived that same day.

Salazar relies on *Paul*, which held that an attorney's "harassing investigation and disclosures made outside [of an] arbitration" did not constitute protected activity under section 425.16, subdivision (e)(2), because the investigation "was allegedly directed to personal matters bearing no relationship to the claims asserted in the arbitration." (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 865–866.) But unlike in *Paul*, Astalos's request regarding Salazar was connected to the dispute over the lease, specifically the maintenance and repair of the premises. Astalos's declaration stated that Salazar sometimes entered the Hyneses property without notice to make repairs. Considering the context and substance of Astalos's statements, we conclude Astalos made a sufficient showing that they constitute protected activity under section 425.16, subdivision (e)(2).

9

### 2. Prong Two – Minimal Merit

Because we conclude Astalos has made a sufficient showing under the first prong of the anti-SLAPP analysis, we next consider whether Salazar can meet his burden of showing that his claims are legally sufficient and supported by evidence that, if credited, would sustain a judgment for plaintiffs. (*Baral, supra*, 1 Cal.5th at pp. 384, 396; *Bowen, supra*, 80 Cal.App.5th at p. 160.) In carrying this burden, the plaintiff must identify " 'competent admissible evidence' " sufficient to establish its causes of action. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.) Such evidence includes "affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial." (*Id.* at p. 949.) Furthermore, on appeal, in determining whether the appellant has carried its fundamental burden of demonstrating error (see, e.g., *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564), we are not obligated "to cull the record for the benefit of the appellant." (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455.)

We conclude that Salazar cannot meet his burden because as he acknowledges in his respondent's brief, he "fully agrees that he did not submit any evidence, let alone admissible evidence, to satisfy [the second] prong" of the anti-SLAPP analysis. In his opposition to Astalos's anti-SLAPP motion before the trial court, Salazar only attached his counsel's declaration detailing her hourly rate and the number of hours spent on preparing the opposition. Salazar attached no declarations from himself or any other witness to the underlying dispute, and he attached no documents. Salazar needed to produce more than just the allegations in his complaint. (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 ["In opposing an anti-SLAPP motion, the plaintiff cannot rely on the allegations

10

of the complaint, but must produce evidence that would be admissible at trial."].)  We therefore conclude that Salazar has failed to meet his burden under the second prong of the anti-SLAPP statute.

DISPOSITION

The trial court's order denying the anti-SLAPP motion is reversed. The matter is remanded to the trial court with instructions to enter a new order granting Astalos's anti-SLAPP motion and to adjudicate any subsequent request for fees and costs.  Astalos may recover her costs on appeal.


                                                              BUCHANAN, J.

I CONCUR:


McCONNELL, P. J.


I CONCUR IN THE RESULT:


O'ROURKE, J.

11